982 P.2d 346

Cavin C. DESMOND, Petitioner–
Appellant,

v.

ADMINISTRATIVE DIRECTOR OF THE
COURTS, STATE OF HAWAII,
Respondent–Appellee.

No. 19966.

Intermediate Court of Appeals of Hawai'i.

May 22, 1998.

Reconsideration Denied June 3, 1998.

Earle A. Partington (Partington & Foley) on the briefs, Honolulu, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, on the briefs for respondent-appellee.

Before BURNS, C.J., ACOBA and KIRIMITSU, JJ.

Opinion of the Court by BURNS, C.J.

This is an administrative revocation of driver's license case governed by Hawai'i Revised Statutes (HRS) §§ 286–251 through 286–266. Petitioner–Appellant Cavin C. Desmond (Desmond) appeals the district court's May 31, 1996 Decision and Order Affirming Administrative Revocation (May 31, 1996 Decision and Order) that affirmed the administrative revocation of Desmond's driver's license. We vacate the May 31, 1996 Decision and Order and remand the case to the district court with the instruction that the matter be remanded for a new administrative hearing in accordance with this opinion and by a different hearing officer.

This opinion discusses the liberal rules of procedure and evidence applicable at administrative hearings held pursuant to HRS § 286–259 (Supp.1995), and a situation where

the Administrative Driver's License Revocation Office (ADLRO) should have granted a pre-administrative hearing request for a subpoena requiring a witness to appear at the scheduled first administrative hearing.

## FACTS

On January 18, 1996, at approximately 8:35 p.m., Maui Police Officer Anselm Yazaki (Officer Yazaki) observed a vehicle driven by Desmond make an illegal U-turn and almost collide with Officer Yazaki's vehicle.

Officer Yazaki activated his blue lights and Desmond pulled over. Officer Yazaki approached Desmond, smelled a strong odor of liquor coming from Desmond's breath, and noticed Desmond had red and watery eyes, slurred speech, and a red face. Maui Police Officer Michael Rodriguez (Officer Rodriguez) arrived to assist with the traffic stop and was advised by Officer Yazaki of Desmond's strong odor of liquor. Maui Police Officer Barry Aoki (Officer Aoki) was with Officer Rodriguez and was present when the field sobriety test was being conducted.

When Officer Rodriguez approached Desmond, as Desmond spoke, Officer Rodriguez also detected an "overwhelming" odor of liquor, red and watery eyes as well as slurred and repetitive speech. Desmond admitted he had four or five drinks of liquor in the previous hour. When Desmond exited the vehicle, Desmond almost fell backwards, stumbled, and tried to regain his balance. At all phases of a field sobriety test, Desmond's performance showed significant signs of his impairment.

Desmond was arrested for driving under the influence of intoxicating liquor (DUI) and was issued a notice of administrative revocation of his driver's license. Officer Rodriguez submitted a sworn statement [1] in which he stated that Desmond refused to take a breath or blood test. On January 26, 1996, the administrative review, pursuant to HRS § 286–258 (1995), and on March 22, 1996, the administrative hearing, pursuant to HRS § 286–259 (1995), affirmed Desmond's driver's license revocation. On May 31, 1996, after its judicial review pursuant to HRS § 286–260 (1993), the district court affirmed the revocation, and Desmond timely appealed.

## PERTINENT STATUTES

The pertinent HRS applicable in this appeal are the following:

**§ 286–252 [1993] Notice of administrative revocation; effect.** As used in this part, the notice of administrative revocation:

(1) Establishes that the arrestee's driving privilege in this State shall be terminated thirty days after the date of arrest or such later date as is established by the director under section 286–259 if the director administratively revokes the arrestee's license;

(2) Establishes the date on which administrative revocation proceedings against the arrestee were initiated; and

(3) Serves as a temporary permit to drive as provided in section 286–255.

\* \* \*

**§ 286–257 [1995] Sworn statements of law enforcement officials.**

(a) Whenever a person is arrested for a violation of section 291–4 and submits to a test that establishes that the arrestee's alcohol concentration was .08 or more, the following shall be immediately forwarded to the director:

(1) A copy of the arrest report and the sworn statement of the arresting officer stating facts that establish that:

(A) There was reasonable suspicion to stop the motor vehicle . . .;

---

1. Arrest Report No. 96–03823 signed by the arresting Police Officer Michael Rodriguez states in relevant part:

I, *Michael RODRIGUEZ*, police officer, swear that the following is true and correct:
\* \* \*

2. I had reasonable suspicion to stop the arrestee, to wit: refer to Maui Police Dept. report # 96–03823
This sworn statement satisfies the requirements of the statute. *Kernan v. Tanaka*, 75 Haw. 1, 32, 856 P.2d 1207, 1223 (1993) *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

(B) There was probable cause to believe that the arrestee had been driving, operating, or in actual physical control of the motor vehicle while under the influence of intoxicating liquor;

(C) The arrestee was informed of the sanctions of this part, that criminal charges may be filed, and the consequences of refusing to be tested for alcohol concentration in the blood; and

(D) The arrestee refused to be tested;

* * *

(4) A copy of the notice of administrative revocation issued to the arrestee;

(5) Any driver's license taken into possession by the arresting officer; and

(6) A listing of any prior alcohol enforcement contacts involving the arrestee.

§ 286–258 [1995] **Administrative review; procedures.** (a) The director shall automatically review the issuance of a notice of administrative revocation, and a written decision administratively revoking the license or rescinding the notice of administrative revocation shall be mailed to the arrestee no later than eight days after the date the notice was issued.

(b) The arrestee shall have the opportunity to demonstrate in writing why the arrestee's license should not be administratively revoked and shall submit any written information within three days of the notice, either by mail or in person, to the director's office or to any office or address designated by the director for that purpose.

(c) In conducting the administrative review, the director shall consider:

(1) Any sworn or unsworn statement or other evidence provided by the arrestee;

* * *

(3) The sworn statements of the law enforcement officials, and other evidence

or information required by section 286–257.

* * *

(f) If the director administratively revokes the arrestee's driver's license, the director shall mail to the arrestee a written decision stating the reasons for the administrative revocation. The decision shall also indicate that the arrestee has five days from the date the decision is mailed to request an administrative hearing to review the director's decision....

(g) ... In no event shall the temporary permit be extended if the arrestee fails to request a hearing within the initial five-day period provided for that purpose.... [2]
(Footnote added.)

§ 286–259 [1995] **Administrative hearing.** (a) If the director administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision within six days of the date the administrative review decision is mailed. The hearing shall be scheduled to commence no later than twenty-five days from the date the notice of administrative revocation was issued. The director may continue the hearing only as provided in subsection (j).

* * *

(d) The director shall conduct the hearing and have authority to:

(1) Administer oaths and affirmations;

(2) Examine witnesses and take testimony;

(3) Receive and determine the relevance of evidence;

(4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken;

(5) Regulate the course and conduct of the hearing; and

(6) Make a final ruling.

(e) The director shall affirm the administrative revocation only if the director determines that:

**2.** This sentence was deleted from Hawai'i Revised Statutes § 286–258(g) by the Legislature in 1996. 1996 Hawai'i Session Laws Act 230, § 2 at 527 (effective July 1, 1996).

(1) There existed reasonable suspicion to stop the motor vehicle or the motor vehicle was stopped at an intoxication control roadblock established and operated in compliance with sections 286–162.5 and 286–162.6;

(2) There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor; and

(3) The evidence proves by a preponderance that the arrestee drove, operated or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having an alcohol concentration of .08 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

(f) The arrestee's prior alcohol enforcement contacts shall be entered into evidence.

(g) The sworn statements provided in section 286–257 shall be admitted into evidence. Upon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing. . . .

\* \* \*

(j) . . . If a continuance is granted at the request of the arrestee, the director shall not extend the validity of the temporary permit. . . .

(k) If the arrestee fails to appear at the hearing, administrative revocation shall take effect for the period and under the conditions established by the director in the administrative review decision issued by the director under section 286–258.

§ 286–260 [1993] **Judicial review; procedure.**

\* \* \*

(c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

## DISCUSSION

### A.

Desmond contends that the district court erred when it affirmed the administrative revocation because, at the administrative hearing, the hearing officer (Hearing Officer) (1) refused to (a) follow any prescribed procedure, (b) rule on objections, and (c) permit counsel to conduct his case; (2) did not remain impartial; and (3) admitted evidence that was incompetent, irrelevant, and inadmissible.

### (1)(a)

■ At the Hearing, Desmond moved for the Hearing Officer to implement the following procedure:

One, the Hearing Officer receives into evidence only the sworn statements described in HRS Section 286–257, and competent evidence of any prior alcohol contacts.

Two, if the Hearing Officer is satisfied that the three-prong test from Kernan v. Tanaka has not been met, the Hearing Officer rescinds the revocation and the hearing is over. Three-prong test being, one reasonable suspicion to stop, probable cause to believe the arrestee is DUI, and three, proof of DUI at the appropriate standard.

Three, the Hearing Officer is satisfied the three-prong test has been met, the arrestee is given an opportunity of offer[ing] evidence to refute any part of the three-prong test or any prior alcohol contact.

Four, if there is any other competent evidence which has become relevant by virtue of the arrestee's evidence, whether documents in the files through witnesses or otherwise the Hearing Officer may receive such evidence.

Five, the Hearing Officer makes findings and either rescinds or upholds the revocation.

Six, if the revocation is upheld the Hearing Officer makes findings as to any prior alcohol contacts and the consequences thereof.

I would note as far as the State is concerned this is not a de novo hearing. Under HRS Section 286–259(a), the purpose of this hearing is to review the Administrative Review Decision, not to conduct a de novo hearing.

After stating for the record the date, place, time, case number, and identifying the parties, the Hearing Officer announced that she would be admitting the entire case file into evidence. The transcript reveals what then occurred:

HEARING OFFICER: ... [A]ll documents admitted. If you would like to make an objection with respect to specific documents, please do so.

[DESMOND'S COUNSEL]: I object to any document being admitted when I am not explained for what purpose the document is being offered.

\* \* \*

[DESMOND'S COUNSEL]: So you are overruling my objection?

HEARING OFFICER: They are all under submission, counsel.

[DESMOND'S COUNSEL]: When do I get a ruling?

HEARING OFFICER: In the decision, counsel.

[DESMOND'S COUNSEL]: Well, excuse me, these rulings [a]ffect whether or not I'm going to put on evidence or not.

HEARING OFFICER: That's right, counsel. You are to make your objection and you may proceed as though everything is denied, if you prefer, and then you can put whatever you need to—

[DESMOND'S COUNSEL]: You're saying you're not going to tell me if these are denied or not until the decision?

HEARING OFFICER: Counsel, if you want a ruling immediately, then it will be denied.

[DESMOND'S COUNSEL]: I want a ruling immediately.

HEARING OFFICER: Denied, but under submission for the future. Move on.

\* \* \*

[DESMOND'S COUNSEL]: Prima facie, the only parts of the record admissible at this hearing are the arrestee's prior alcohol enforcement contacts and the sworn statements provided for in HRS Section 286–257.

I would note specifically that the arrest report, including the field sobriety test, is not evidence to be admitted under HRS Section 286–259(f) and (g), which provide for admission of prior alcohol contacts and sworn statements. In fact, it's very clear from the statute that the legislature contemplated that the arrest report and the sworn statement of the arresting office would be two separate documents. Certainly, the unsworn parts of the police report are inadmissible, because they are not made on personal knowledge and we have no way of knowing here at this point, whether all of the police reports [were] made on personal knowledge.

Certainly, as I've noted, the violator history records are inadmissible, because they are no prior alcohol contacts [sic].

Finally, prima facie, the sworn statement of the arresting officer does not comply with 286–257(a)(1)(c), that requires that the arrestee be informed of the consequences of the refusal, as well as the sanctions of part 14. I want to note it's in the conjunctive. The only part the arrestee was informed of on here are the consequences of refusing. He was never informed of the sanctions of this part.

Finally, I would point out that he was misinformed. If you take a look at 4 f, of the officer[']s sworn statement it states that he shall be required to obtain treatment at his own expense if deemed appropriate. That statement is patently false. The Supreme Court has ruled on that in the Torimura (phonetic), that there is no requirement. Thus, he was not properly informed. The field sobriety test has not

been incorporated in the arresting officer's statement.

\* \* \*

[DESMOND'S COUNSEL]: Those are my objections at this point.

HEARING OFFICER: Noted for the record. Anything else?

[DESMOND'S COUNSEL]: I'd like them ruled on, not noted for the record, ruled on.

HEARING OFFICER: Counsel, you may want them to be not noted for the record, I indicated to you they were under submission. I also indicated that you were to proceed, if you didn't like that it was under submission, as though your objections were denied, so that you could present a record.

[DESMOND'S COUNSEL]: As though they were denied—

HEARING OFFICER: Right.

[DESMOND'S COUNSEL]:—is not good enough.

HEARING OFFICER: It is up to you. Well, that is life.

[DESMOND'S COUNSEL]: So they're denied?

HEARING OFFICER: No, they're under submission, counsel. Proceed, please.

\* \* \*

[DESMOND'S COUNSEL]: Well, so we're left with this nebulous ruling.

[HEARING OFFICER]: Presenting your case, we are left with you presenting your case, yes.

\* \* \*

[DESMOND'S COUNSEL]: I wish to call Officer Rodriguez.

\* \* \*

HEARING OFFICER: I am calling— okay, you may call Officer Rodriguez, I am calling the stopping officer.

After Officer Yazaki and then Officer Rodriguez testified, the following was stated:

[DESMOND'S COUNSEL]: Nothing further. I think the record is clear that there has been non compliance with the statute.

HEARING OFFICER: Okay. Then the documents in the case file, arguments, objections and motions made by counsel, testimony presented today will be taken under consideration. A decision will be issued five days from today and will be mailed to you, ... [DEFENSE COUNSEL], on behalf of your client, Mr. Desmond.

Desmond complains that the Hearing Officer refused to follow permissible procedure. We note that HRS § 286-263 (1993) expressly provides that the administrative hearing shall not be subject to "the contested case requirements of [HRS] chapter 91 [Hawai'i Administrative Procedure Act]." We conclude that the applicable law does not require the Hearing Officer to follow the procedure proposed by Desmond.

In *Kernan v. Tanaka*, 75 Haw. 1, 30, 856 P.2d 1207, 1222, *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994), the Hawai'i Supreme Court stated:

[T]he arrestee does not have to present any evidence until the reviewing officer determines that sufficient grounds for the revocation exist. Thus, the police have the initial burden to prove that: (1) reasonable suspicion existed to stop the vehicle; (2) probable cause existed to believe the arrestee was driving under the influence; and (3) by a preponderance of the evidence, the arrestee did in fact drive under the influence. Only after these burdens have been met does the arrestee carry any burden of contrary proof.

*Kernan* establishes that the police have the initial burden of proving certain facts before the arrestee bears the burden of "contrary proof." The record indicates that the Hearing Officer complied with this requirement.[3]

---

3. In the instant case, the Hearing Officer had sufficient evidence on the record based on the sworn police report to find that the police satisfied their burden. When Petitioner–Appellant Cavin C. Desmond began examining witnesses, he was entering evidence on the record to counter the evidence against him.

It is advisable that, at the commencement of the administrative hearing, the Hearing Officer inform the parties what procedure he or she will follow. In Desmond's case, the Hearing Officer did that. She did not err in following her procedure rather than the procedure proposed by Desmond.

### (1)(b)

Desmond contends that the Hearing Officer erred when she refused to rule on his objections. This is a misrepresentation of the record. The Hearing Officer expressly denied Desmond's objections but reserved the right to subsequently change her mind.

### (1)(c)

■ Desmond contends that the Hearing Officer violated his constitutional rights to due process of law when she refused to permit Desmond to call witnesses in the order he wanted. We conclude that Desmond has no such rights.

The relevant statute does not authorize the arrestee to examine witnesses in the order of the arrestee's choice. HRS § 286–259(d)(5) states that it is the Hearing Officer's prerogative to regulate the course and conduct of a hearing.

■ Apart from the relevant statute, the general rule is that "[t]he latitude permitted counsel in offering testimony and the order of that testimony rests completely within the discretion of the trial court, and an abuse of that discretion must be established before reversal of a conviction based on the testimony or a new trial may be warranted." *State v. Alfonso*, 65 Haw. 95, 99, 648 P.2d 696, 700 (1982) (citations omitted).

■ We are aware of the following two exceptions to the general rule: First, such discretion does not extend to a situation where "[t]he judge ordered [the defendant] to present his defense to the DUI charge before hearing all of the State's evidence against him." *State v. Grindles*, 70 Haw. 528, 532, 777 P.2d 1187, 1190 (1989). Second, according to the United States Supreme Court, "[w]hile nothing we say here other-wise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972). Neither of the two exceptions to the general rule is relevant in Desmond's case.

### (2)

Desmond's contention that the Hearing Officer failed to remain impartial is unsupported by the record and without merit. As noted above, the Hearing Officer may regulate the course and conduct of a hearing. Moreover, the Hearing Officer is permitted to examine witnesses and take testimony. HRS § 286–259(d)(2). *Kernan v. Tanaka*, 75 Haw. at 30–31, 856 P.2d at 1222.

### (3)

Desmond contends that the Hearing Officer erred by admitting evidence that was incompetent, irrelevant, and inadmissible. On this subject, the Hawai'i Supreme Court has stated that the

> Hawai'i's procedure allows the arrestee to correct any mistakes that may have been made by the director as well as to challenge the reports and statements presented against him. *See* HRS §§ 286–258(f) and 259(d). The arrestee is also given the opportunity to confront those who submitted statements and reports. *Id.* These procedures provide a reasonable and reliable basis for ascertaining the facts.

*Kernan*, 75 Haw. at 27–28, 856 P.2d at 1221.

■ HRS § 286–257(b) specifies what must be forwarded to the ADLRO when a person is arrested for DUI and refuses to submit to a breath or blood test. HRS § 286–258(c) sets forth what the ADLRO "shall consider" in conducting the administrative review. HRS § 286–259 governs administrative hearings. It specifies two items that "shall" be "entered" or "admitted" into evidence: the sworn statements [4] forwarded

---

**4.** The statute requires *sworn statements,* not statements given under oath or even notarized

pursuant to HRS § 286–257; and the arrestee's prior alcohol enforcement contacts. HRS § 286–259(d)(3) gives the Hearing Officer the discretion to determine relevance and admissibility of all other evidence. Thus,

> [t]he technical rules of evidence applicable to judicial proceedings generally do not govern agency proceedings, and need not be observed so long as evidentiary rules which are applied are not applied in an arbitrary or oppressive manner that deprives a party of his or her right to a fair hearing. The more liberal an agency's policy is in admitting evidence, the more essential it is that the agency grant the parties the right to cross-examine and rebut evidence considered by the agency. An agency should receive all evidence which is competent, relevant and material, regardless of its weight, and a refusal to hear such evidence can constitute a denial of due process.

2 Am.Jur.2d, *Administrative Law* § 345 (1994).

The Hearing Officer admitted the entire case file into evidence. Desmond objected to specific documents in the record that, in his opinion, were not relevant to the three-prong test questions of whether there was reasonable suspicion to stop Desmond, there was probable cause to believe Desmond was DUI, and the evidence proved by a preponderance that Desmond was DUI.

■ In this appeal, Desmond contends, in essence, that the Hearing Officer is not authorized to allow into the record anything that is not specified by the statute or is not relevant. We disagree. Based on HRS §§ 286–257, –258, and –259, we conclude that, upon the petitioner's objection, the Hearing Officer must exclude from the record only the following: (a) all unsworn statements (except the arrest report) of law enforcement officials who do not appear to testify; and (b) all other evidence that is both irrelevant and prejudicial.

■ Desmond objected to the admission of the "form request for subpoenas," "a facsimile cover sheet," "copies of the subpoenas," "copies of the notices of this hearing, [his] request to continue at a half-an-hour, request for copies[,]" "[a]nother facimile [sic] cover sheet, the original setting for the hearing at 9:15," "Mr. Desmond's request for administrative hearing[,]" the "Notice for Administrative Review Decision," the "certificate of mailing," and the unsworn police reports.

The Hearing Officer erred when she admitted Officer Aoki's unsworn statement because Officer Aoki did not appear to testify. However, the Hearing Officer's Findings of Fact, Conclusions of Law, and Decision state in relevant part that:

> 3. Counsel noted for the record that the request for the subpoena for the Assisting Officer had been denied, commenting on why he had wanted the Assisting Officer. The request for a subpoena was not renewed at [the] Hearing. This Hearing Officer finds that although the record makes references to the Assisting Officer, there is no substantive information provided in the documentation submitted to the ADLRO from the Assisting Officer. This Hearing Officer nevertheless gives no weight to any references to the Assisting Officer in the consideration of this Decision.

(Footnote omitted.) Thus, it appears that this error was harmless.

Officer Yazaki testified. Thus, the Hearing Officer did not err when she admitted Officer Yazaki's unsworn statement. Since none of the other documents admitted into evidence over Desmond's objection were

---

statements. The lack of statutory language creating these additional requirements raises a presumption that a statement sworn to by the officer is sufficient. The three statements submitted in each of the Appellants' cases bore the signature of that person and the statement, "I, (officer's name), swear that the following is true and correct." The statute requires nothing more. [Emphasis in original.]

*Kernan v. Tanaka,* 75 Haw. 1, 32, 856 P.2d 1207, 1223 (1993) *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). The job of the Administrative Driver's License Revocation Office would be simpler if all statements of every law enforcement official were worded as sworn statements. *See* footnote 1, *supra.*

prejudicial, the Hearing Officer did not err in not excluding them.

### B.

■ Desmond contends, "THE DISTRICT COURT ERRED IN UPHOLDING THE HEARING OFFICER'S FINDING THAT DESMOND WAS INFORMED OF THE SANCTIONS OF H.R.S. CHAPTER 286, PART XIV, AND THAT NO EVIDENCE TO THE CONTRARY WAS OFFERED." Desmond further contends that the "[H]earing [O]fficer's finding that Desmond failed to establish that he was not informed of all of the sanctions is contrary to the testimony of the arresting officer at the hearing that he only informed Desmond of the consequences and sanctions set forth in his sworn statement." We disagree.

Officer Rodriguez' sworn statement and his testimony at the hearing constitute evidence that Desmond was informed of the "sanctions of this part, that criminal charges may be filed, and the probable consequences of refusing to be tested for concentration of alcohol in the blood[.]" HRS § 286–257(b)(1)(C) (Supp.1995). Desmond contends that he should have been informed of "(1) the criteria for, and the restrictions on, a conditional permit and the consequences of violating those restrictions (H.R.S. § 286–264(d)), and (2) the requirements for relicensing (H.R.S. § 286–265)." We disagree. HRS § 286–257(b)(1)(C) does not require that all possible and incidental effects of a refusal to consent to a chemical test be explained to an arrestee.

Desmond also contends that the district court erroneously found that he did not offer evidence to the contrary. Actually, the Hearing Officer found that "there was no evidence in the record that the arrestee did not understand the sanction." The record supports this finding.

### C.

In *Miller v. Tanaka*, 80 Hawai'i 358, 910 P.2d 129 (App.1995), this court concluded that

> when both HRS §§ 286–259(d) and 286–259(g) are read together, it is clear that, in

addition to the officers who are required to be subpoenaed, the director may issue subpoenas to other officers or individuals.

Subsequently, in *Biscoe v. Tanaka*, 76 Hawai'i 380, 385, 878 P.2d 719, 724 (1994), the Hawai'i Supreme Court declared that the issuance of subpoenas other than those required under HRS § 286–259(g) is left to the discretion of the director. The *Biscoe* court, however, advised that to ensure that an arrestee's rights are adequately protected, the director should issue all requested subpoenas unless the witness does not possess any relevant evidence or the subpoena request is otherwise deficient. *Id.* Furthermore, if a proper request is made for a subpoena for a relevant witness, the refusal to issue the subpoena would constitute an abuse of discretion.

*Id.* at 365, 910 P.2d at 136 (quotation marks and brackets omitted). In other words,

> [t]he test for determining whether a subpoena should be issued to an individual to secure the individual's presence at an administrative revocation of driver's license hearing thus involves a two-step inquiry: (1) Does the individual possess any relevant evidence? and (2) Was the subpoena properly requested? If the answer to both of the foregoing questions is yes, the refusal of a hearing officer to issue the requested subpoena would constitute an abuse of discretion.

*Simmons v. The Administrative Director of the Courts, State of Hawai'i*, No. 19884, slip op. (App. April 9, 1998), *cert. granted*, May 11, 1998.

■ On March 4, 1996, prior to the first hearing, Desmond submitted a Request for Subpoenas to be Issued. The request was granted for Officers Rodriguez and Yazaki but not for Officer Aoki, notwithstanding the fact that the request identified Officer Rodriguez as the "Arresting Officer" and Officer Aoki as the "Assisting Officer to Officer M. Rodriguez." Desmond contends that the district court erred in upholding the denial of a subpoena compelling Officer Aoki to testify at the hearing. Desmond further contends that, notwithstanding this court's statement in *Aspinwall v. Tanaka*, 9 Haw.App. 396,

404, 843 P.2d 145, 149 (1992), the administrative revocation process was intended to be "expeditious,"

> the ADLRO has adopted a policy of denying prehearing subpoena requests for anyone other than the police officers who have provided sworn statements pursuant to H.R.S. § 286-257(a) and (b). It does not matter if the arrestee, as in the instant case, includes on the subpoena request the fact that the requested officer assisted the arresting officer, a fact easily verifiable from the police report contained in the ADLRO file. Under the current practice, if the arrestee still wants the witness, he or she must appear at the hearing so that the witness may be served with the subpoena.

> This ADLRO policy not only runs counter to the intent of the legislature, but (1) increases the arrestee's cost of litigating the license revocation as well as stretching out the process needlessly and (2) unfairly limits the arrestee's right to promptly call all relevant witnesses.

The State responds that

> the subpoena request is deficient precisely because it does not clearly show that Officer Aoki possessed any relevant evidence.

> At the administrative hearing, however, [Desmond] did arguably make a showing as to why Officer Aoki may have possessed relevant evidence, by having Officer Rodriguez testify that Aoki was present at, and would have seen the giving of, the field sobriety test. At that point, [Desmond] would at least have had an arguable basis for the issuance of a subpoena for Officer Aoki. However, [Desmond] never renewed his request for a subpoena of Officer Aoki, and he thus waived any objection to the denial of the subpoena.

(Emphasis omitted.)

The State's response is incorrect. Desmond's request for a subpoena of Officer Aoki expressly identified Officer Rodriguez as the "Arresting Officer" and Officer Aoki as the "Assisting Officer to Officer M. Rodriguez." Desmond made a showing as to why Officer Aoki possessed relevant evidence. Moreover, the record contained Officer Aoki's "Incident Report."

The facts reported in *Simmons v. The Administrative Director of the Courts, supra,* and the record in this case show that it is the ADLRO's practice, prior to the first hearing, to issue requested subpoenas only to the law enforcement officials who submitted sworn statements (Officer Rodriguez) and who stopped the arrestee (Officer Yazaki). In cases where a request is made for subpoenas of other relevant witnesses, there will always be a continuance of the first hearing. This practice makes continued hearings the norm rather than the exception. Moreover, when the subpoena was requested by the arrestee, the continuance is designated an "arrestee's continuance" and no extension of the 30-day permit is permitted.

 We are thus presented with the question of timing. As noted by Desmond, the Administrative Driver's License Revocation law is intended to be expeditious. *Aspinwall v. Tanaka,* 9 Haw.App. at 404, 843 P.2d at 149. We conclude that the law requires compliance with the following requirement: Where an arrestee's timely request for the issuance of a subpoena compelling the attendance of a witness at the first hearing states one or more facts showing that the witness is a relevant witness, the subpoena shall be issued prior to the first hearing. The Hearing Officer violated this requirement when she failed to grant Desmond's request for a subpoena of Officer Aoki.

> Where a hearing officer refuses to issue properly requested subpoenas for relevant witnesses prior to the scheduled hearing, the hearing officer abuses his or her discretion. It logically follows that where a hearing officer waits until the commencement of the scheduled hearing to decide whether particular subpoenas should be issued and then routinely continues the hearing if he or she decides to issue the subpoenas, the continuance is not for good cause and is invalid. If the continuance is invalid, the continued hearing would not comply with the mandatory time requirements set forth in HRS § 286-259 and would therefore be illegal and void.

*Simmons v. The Administrative Director of the Courts, supra,* at 27. The above-quoted *Simmons* rule applies in Desmond's case.

### D.

■ Desmond contends that

[i]n *Biscoe v. Tanaka*, 76 Hawai'i 380, 878 P.2d 719 (1994), the supreme court held that Article V, § 6, of the Hawaii [Hawai'i] Constitution did not require the ADLRO to be placed within the executive branch instead of the judicial branch. However, the court did not consider Article VI, § 1. Reading Article V, § 6, with Article VI, § 1, the ADLRO must be assigned to one of the executive departments (here, obviously, the Department of Transportation) because clearly, the ADLRO is not a court, but an executive agency and thus not properly part of the judiciary.

(Emphasis and footnotes omitted.)

Article VI, § 1, of the Hawai'i Constitution states:

The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

Based on the precedent of *Biscoe v. Tanaka, supra,* we conclude that Article VI, § 1 and Article V, § 6, neither separately nor together prohibit the establishment of the ADLRO in the Judiciary.

### E.

■ This court held in *Miller v. Tanaka, supra,* that where an abuse of discretion occurs at the administrative hearing, the appellate court has the authority to "remand the case to the district court with instructions that it vacate the hearing officer's [decision] ... and remand the matter to the Director for further proceedings consistent with this opinion." *Id.* at 369, 910 P.2d at 140.

On July 1, 1996, Act 230 added the following subsection to HRS § 286–260: "(d) The court shall not remand the matter back to the director for further proceedings consistent with its order." In other words, when the court decides that the answer to any of the questions stated in HRS § 286–260(c) is yes, it must rule in favor of the appellant. However, Act 230, § 7, also states that "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date."

Desmond's arrest and the revocation of his driver's license occurred on January 18, 1996, and the ADLRO proceedings in his case began on that date.[5] Therefore, HRS § 286–260(d) is not applicable in this case.

### CONCLUSION

Accordingly, we vacate the May 31, 1996 Decision and Order Affirming Administrative Revocation and remand the case to the district court with the instruction that it remand the matter for a new administrative hearing in accordance with this opinion and by a different hearing officer.

---

5. In *Kernan v. Tanaka*, the Hawai'i Supreme Court stated that the "[a]dministrative revocation begins when a police officer stops a motorist suspected of DUI, arrests him or her, and takes possession of the arrestee's driver's license, giving the arrestee notice of the revocation action." *Kernan*, 75 Haw. at 17, 856 P.2d at 1216. We interpret Act 230, section 7, of the 1996 Session Laws where it states "proceedings that were begun before its effective date" to include the date of arrest wherein an arrestee's license is physically revoked as the date upon which administrative driver's license revocation proceedings begin.