120 P.3d 249

**Curtis C. CUSTER, Petitioner–Appellant**

v.

**ADMINISTRATIVE DIRECTOR OF the COURTS, State of Hawai'i, Respondent–Appellee.**

No. 26026.

Supreme Court of Hawai'i.

Sept. 23, 2005.

Reconsideration Denied Nov. 8, 2005.

Earle A. Partington, on the briefs, Honolulu, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold, in this appeal by Petitioner–Appellant Curtis C. Custer (Custer), from the July 16, 2003 judgment of the district court of the first circuit [1] (the court) affirming the May 5, 2003 decision of Respondent–Appellee Administrative Director of the Courts, State of Hawai'i [2] (Director), that the Director may not, in an administrative hearing filed pursuant to Hawai'i Revised Statutes (HRS)

1. The Honorable Lono J. Lee presided.

2. Hawai'i Revised Statutes (HRS) § 291E–1 (Supp.2003) states that, " 'Director' means the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews or hearings or carry out other functions relating to administrative revocation under part III [entitled

'Administrative Revocation Process']." By virtue of this provision, the hearing officer exercises the powers of the administrative director of the courts in conducting administrative review hearings. *See Soderlund v. Admin. Dir. of the Courts,* 96 Hawai'i 114, 115 n. 1, 26 P.3d 1214, 1215 n. 1 (2001).

§ 291E–38 (Supp.2003), consider an offense occurring after the HRS § 291E–31 (Supp. 2003) notice of administrative revocation had been issued, as a basis for increasing an administrative revocation period already determined on administrative review by the Director under HRS §§ 291E–37 and 291E–41 (Supp.2003). In light of our holding, we reverse the additional three-month revocation period imposed by the Director relating to Custer's March 7, 2003 arrest for an offense that occurred after the January 6, 2003 arrest for which the notice of revocation had been issued in this case. We affirm the aforesaid judgment in all other respects.

## I.

On January 6, 2003, Custer was arrested for driving under the influence of an intoxicant (DUI), in violation of HRS § 291E–61 (Supp.2002). Police confiscated Custer's license and issued him a thirty-day temporary driving permit valid through February 5, 2003. On January 10, 2003, following the administrative review by the Director that automatically followed Custer's arrest pursuant to HRS § 291E–37, a hearing officer of the Administrative Driver's License Revocation Office (ADLRO) sustained the revocation of Custer's driver's license in an administrative review hearing. Custer's license was revoked for the three-month period between February 6, 2003 and May 5, 2003. On January 22, 2003, the ADLRO received Custer's request for an administrative hearing pursuant to HRS § 291E–38.

On February 5, 2003, Custer's temporary permit for the January 6, 2003 arrest expired. On March 7, 2003, Custer was arrested for a second DUI, HRS § 291E–61 (Supp. 2002), while driving without a valid license.

By an April 1, 2003 letter, Custer was notified to appear at the ADLRO on April 30, 2003, at 9:30 a.m. for his hearing. The mat-ter had been set for earlier dates (on February 13, 2003, March 13, 2003, and April 1, 2003), but had been continued pursuant to Custer's requests and upon finding good cause for Custer's continuances.

Prior to the hearing, Custer requested a subpoena to Chief Adjudicator Ronald Sakata (Sakata), which was administratively denied. Just before the April 30, 2003 hearing, Custer alleges that an unidentified woman came into the ADLRO and asked to attend his hearing. This woman was informed by the receptionist and hearing officer that she could not attend the hearing unless she showed identification and signed in at the reception desk. The woman refused to produce identification or sign in, and therefore was denied entry.[3]

## II.

Custer appeared with counsel at the April 30, 2003 hearing.[4] The hearing began with the hearing officer receiving the arrest report, the sworn statements of the arresting officer Christopher Chung (Chung) and Medical Technician Edgar Talavera, and Custer's traffic violation record which showed no prior offenses, but one subsequent revocation.

Custer's counsel requested a hearing on the security procedures. The hearing officer denied the request stating it was beyond the scope of her authority, but allowed counsel's objections to become part of the record. The hearing officer also noted that she had denied counsel's request to subpoena Sakata, since the subpoena went to the issue of whether or not the security sign-in procedure was warranted.

Custer then requested that a proposed "Intoxilyzer 5000/Blood Test Case Procedure" be followed at the hearing. The hearing officer emphasized that the hearing must be conducted pursuant to HRS § 291E–38,[5]

---

**3.** Custer contends that the woman had no objection to a physical search, but refused to produce identification or sign in as she believed this to be an invasion of her privacy.

**4.** Although the ADLRO's Findings of Fact, Conclusions of Law, and Decision (Decision) state that Custer "was not present," the April 30, 2003 transcript indicates that he was present.

**5.** HRS § 291E–38 states in relevant part as follows:

> (b) The hearing shall be held at a place designated by the director as close to the location where the notice of administrative revocation was issued as practical.
>
> (c) The respondent may be represented by counsel and, if the respondent is under the age

which prescribes the administrative hearing and procedure.

The hearing was conducted *de novo* based on prior judicial review decisions. Custer objected, arguing that HRS § 291E–38 "states that the Director shall affirm the review decision if he finds certain things" and that treating the hearing as *de novo* is contrary to clear law in this jurisdiction. Custer also objected to admitting the unsworn statements submitted by Officer Michele Yoshiki (Yoshiki) as well as the results of the standard field sobriety tests she administered to Custer. The hearing officer did not consider Yoshiki's unsworn statement or the field sobriety test in making her decision.

Custer then objected to the admission of the sworn statement of Officer Scott Tamaoka since the officer referred to a preliminary breath test. However, the hearing officer overruled the objection because the test pertained to the issue of probable cause.

Custer next objected that jurisdiction was absent because Chung had failed to sign the jurat[6] on the Notice of Administrative Revocation but instead had signed the Certified Statement of Dismissal section, dating it January 6, 2003. However, Chung had not marked the section that states, "This certifies that the administrative revocation proceeding against you has been terminated with prejudice and that your driver's license and motor vehicle registration and license plates, if applicable, have been returned to you (1) because your alcohol concentration test was less than .08 if your case involved an alcohol related offense."

Custer objected, first asserting that because there was no date, time or location given on the line that affirms the notice was issued, there is no evidence that the notice was ever provided to him and this is a fatal defect. Second, Custer argued that even though he had signed the notice to acknowledge that he had received it, all he had acknowledged was receipt of a document saying the matter had been dismissed. The hearing officer inferred that the case was not dismissed because Chung had submitted the required documents and the case was before her.

Custer also objected to the implication in the Honolulu Police Department (HPD) 396B Implied Consent Form (Form 396B) that the *only* issue in an administrative revocation is a test showing a breath or blood alcohol of .08 or higher or a refusal; that the distinction between a criminal suspension and an administrative revocation is not explained on the Notice of Administrative Revocation as required by HRS § 291E–34(a)(2) (Supp. 2003); that HPD Form 396B does not notify a person that the word "vehicle" includes a vessel and a moped; and that Custer was not informed that he had a legal right to refuse a test.

On May 5, 2003, the hearing officer sustained the revocation of Custer's driver's license. The hearing officer also increased the

---

of eighteen must be accompanied by a parent or guardian.

 (d) The director shall conduct the hearing and have authority to:
 (1) Administer oaths and affirmations;
 (2) Examine witnesses and take testimony;
 (3) Receive and determine the relevance of evidence;
 (4) Issue subpoenas;
 (5) Regulate the course and conduct of the hearing; and
 (6) Make a final ruling
 . . . .
 (g) The respondent's prior alcohol and drug enforcement contacts shall be entered into evidence.
 (h) The sworn statements provided in section 291E–36 shall be admitted into evidence. The director shall consider the sworn statements in the absence of the law enforcement officer or other person. Upon written notice to the director, no later than five days prior to the hearing, that the respondent wishes to examine a law enforcement officer or other person who made a sworn statement, the director shall issue a subpoena for the officer or other person to appear at the hearing. Personal service upon the law enforcement officer or other person who made a sworn statement shall be made no later than forty-eight hours prior to the hearing time. If the officer or other person cannot appear, the officer or other person at the discretion of the director, may testify by telephone.

6. The jurat states, "I SWEAR OR AFFIRM THAT THIS NOTICE WAS ISSUED TO YOU ON THE DATE, TIME, AND LOCATION PROVIDED HEREIN," and provides a space beneath this statement for the arresting officer to sign and specify the time, date and location the notice was issued to the arrestee.

revocation period from three months to six months. The hearing officer in her "Findings of Fact, Conclusions of Law, and Decision," stated *inter alia* as follows:

Lastly, this [h]earing [o]fficer has determined that [Custer's] revocation is amended to a six-month revocation. Upward adjustment of the revocation period is within the hearing officer's discretion. See, *Gray v. [Admin. Dir. of the Court, State of Hawai'i]*, 84 Hawai'i 138, 931 P.2d 580 (1997). This [h]earing [o]fficer notes that [Custer] was arrested for a violation of [HRS] § [ ]291E–61 on March 7, 2003. This [h]earing [o]fficer further notes that [Custer's] temporary permit for the January 6, 2003 arrest (this case) expired on February 5, 2003. [Custer] would have been driving without a valid license for the March 7, 2003 arrest. This [h]earing [o]fficer finds that [Custer] had exercised extremely poor judgment in continuing to drive and shown wanton disregard for his safety as well as the safety of the general public.

### III.

Custer sought judicial review and appealed to the court. On July 16, 2003, the court affirmed the hearing officer's decision and entered a separate judgment.

### IV.

On appeal, Custer essentially argues that (1) the court erred in holding that Custer's state and federal constitutional rights to a public hearing were not violated with respect to (a) restrictions on public access to his ADLRO hearing, (b) his right to a hearing on the validity of those restrictions, (c) his right to challenge the validity on those restrictions on behalf of the public, and (d) the State's failure to justify the restrictions on the ADLRO hearings; (2) the court erred in holding that the hearing officer (a) had the power to increase Custer's revocation period from that set in the administrative review, and (b) properly considered Custer's subsequent DUI arrest as the basis for extending the revocation period; (3) the court erred in ruling that Custer had not been denied due process of law based on (a) a seeming contradiction in HRS § 291E–38(a) which declares the revocation hearing will "review the [administrative review] decision," yet allows motorists to call witnesses and offer evidence, suggesting that the hearing is *de novo*, (b) the lack of a uniform hearing procedure, (c) the admission of the entire ADLRO file, and (d) the hearing officer's adherence to *Desmond v. Admin. Dir. of the Courts*, 91 Hawai'i 212, 220, 982 P.2d 346, 354 (App.1998), *rev'd on other grounds*, 90 Hawai'i 301, 978 P.2d 739 (1998) (holding that hearing officers should inform the parties of the procedures at the beginning of the hearing); (4) the court erred in holding the ADLRO had jurisdiction because (a) the arresting officer had failed to sign the jurat on the Notice of Administrative Revocation and instead had signed the Certified Statement of Dismissal and (b) the procedure in HRS § 291E, Part III, which requires a valid chemical test result or refusal to confer jurisdiction on the ADLRO, had apparently been disregarded; (5) the court erroneously upheld the revocation when HPD Form 396B (a) informed Custer that operating a vehicle on a public street meant that he had consented to a blood or breath test, but failed to tell him he had a right to withdraw that consent, (b) erroneously implied that the only issue in an administrative revocation is whether a test is over .08 or is refused, and (c) failed to inform Custer that the word "vehicle" includes a "vessel" and "moped"; (6) the court erred in holding that HRS § 291E–34(a)(2) was not violated in view of the fact that HPD Form 396B does not adequately explain the distinction between administrative revocation and criminal suspension; and (7) the hearing officer reversibly erred in citing to unpublished district court ADLRO decisions to justify her decision. Custer requests that this court reverse the decision of the court upholding Custer's driver's license revocation and order that Custer's driver's license be returned to him.

### V.

 " 'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court

must determine whether the court under review was right or wrong in its decision.' " *Freitas v. Admin. Dir. of the Courts,* 108 Hawai'i 31, 43, 116 P.3d 673, 685 (2005) (quoting *Soderlund v. Admin. Dir. of the Courts,* 96 Hawai'i 114, 118, 26 P.3d 1214, 1218 (2001)) (internal quotation marks, citations, and brackets omitted). "HRS § 291E–40 (Supp.200[3]) governs judicial review by the district court of an administrative revocation of a driver's license by the Director."[7] *Id.* (footnote omitted). " 'The interpretation of a statute is a question of law reviewable *de novo.*' " *Gray,* 84 Hawai'i at 144, 931 P.2d at 586 (quoting *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)) (other citations omitted).

## VI.

We have previously resolved the issues raised in arguments (1)(a), (1)(b), (1)(c), (1)(d), (3)(a), (3)(b), (3)(c), (3)(d), (4)(b), (5)(a), (5)(b), (5)(c), (6), and (7). *See Freitas, supra,* and *Dunaway v. Admin. Dir. of the Courts,* 108 Hawai'i 78, 117 P.3d 109 (2005).

## VII.

As mentioned, in arguments (2)(a) and (2)(b), Custer maintains that the hearing officer (a) did not have the power to increase Custer's revocation period from that set in the administrative review, and (b) improperly considered Custer's subsequent DUI arrest as the basis for extending the revocation period.[8] We conclude that Custer was correct with respect to these arguments.

7. "HRS § 291E–40 is the recodified version of HRS 286–260 (1993). In provision (a), 'arrestee' was substituted with 'respondent' and 'offense' was substituted with 'incident.' Section (d) was added to the new version." *Freitas,* 108 Hawai'i at 43 n. 11, 116 P.3d at 685 n. 11.

HRS § 291E–40 states in relevant part as follows:
**Judicial review; procedure.** (a) If the director sustains the administrative revocation after an administrative hearing, the respondent ... may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. The petition shall be filed with the clerk of the district court in the district in which the incident occurred and shall be accompanied by the required filing fee for civil actions....

### A.

■ It is pertinent to first consider the relevant steps involved in the administrative driver's revocation process.

In interpreting HARDLA's [Hawai'i Administrative Revocation of Driver's License Act] provisions, we must, of necessity, observe some established rules of statutory construction.

... When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

. . . .

[*State v.*] *Toyomura,* 80 Hawai'i [8,] 18–19, 904 P.2d [893,] 903–04 [(1995)].

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (footnote omitted). Pursuant to HRS § 291E–34(b) (Supp.2003), the notice of administrative revocation issued by the arresting officer refers to the initial procedural step leading to administrative review as follows:

(b) *The notice,* when completed by the law enforcement officer and issued ..., *shall contain at a minimum the following information* ...:

. . . .

. . . .
(c) The sole issues before the court shall be whether the director:
(1) Exceeded constitutional or statutory authority;
(2) Erroneously interpreted the law;
(3) Acted in an arbitrary or capricious manner;
(4) Committed an abuse of discretion; or
(5) Made a determination that was unsupported by the evidence in the record.
(d) The court shall not remand the matter back to the director for further proceedings consistent with its order.

8. Custer also maintains that to allow an increased license revocation period would penalize Custer for an offense for which he was not convicted but only arrested.

(3) The date issued and the date the administrative revocation is scheduled to go into effect;

....

(6) *That the issuance of the notice of administrative revocation will be administratively reviewed.*

(Emphases added.) At the next stage denominated as "administrative review," the director is charged with "review[ing]" the issuance of a notice and determining the appropriate revocation period. HRS § 291E-37 provides in relevant part:

(a) *The director automatically shall review the issuance of a notice* ....

(b) The respondent shall have the opportunity to demonstrate in writing why the respondent's license and privilege to operate a vehicle ... should not be administratively revoked and, within three days ... shall submit any written information ... to the director's office....

....

(g) If the director administratively revokes the respondent's license and privilege to operate a vehicle, ... the director shall mail a written review decision to the respondent.... The written review decision shall:

....

(2) Indicate that the respondent has six days from the date the decision is mailed to request an administrative hearing to review the director's decision; ·

....

(h) Failure of the respondent to request a hearing within the time provided ... shall cause the *administrative revocation to take effect for the period and* under the conditions *provided in the administrative review* decision issued by the director under this section.

(Emphases added.) HRS § 291E–41 entitled "Effective date and *period of administrative revocation; criteria,*" (emphasis added) sets forth the different lengths of revocation periods that may be imposed by the director. It states that "[u]nless ... the temporary permit, and temporary motor vehicle registration and temporary num-

ber plates if applicable, are extended by the director, administrative revocation shall become effective on the day specified in the notice of administrative revocation." HRS § 291E–41(a). The period of administrative revocation runs for the period designated by the director pursuant to HRS § 291E–41(b). With respect to the instant case, that section mandates in relevant part that

[t]he periods of administrative revocation with respect to a license and privilege to operate a vehicle ... that *shall be imposed under the part are as follows:*

(1) *A minimum of three months up to a maximum of one year revocation* of license and privilege to operate a vehicle, if the respondent's record shows no prior alcohol enforcement contact or drug enforcement contact during the five years preceding the date the notice of administrative revocation was issued[.]

HRS § 291E–41(b) (emphases added). Hence, the foregoing establishes that the administrative revocation period begins on "the day specified in the notice" and, in this case, continues for a period not less than three months nor more than one year from that date as determined by the Director, inasmuch as the driver's record apparently contained no enforcement contact during the five years that preceded the date of the notice.

Under HRS § 291E–34(c)(5) (Supp.2003), the administrative review decision is mailed to the respondent and, as indicated in HRS § 291E–34(e)(9) (Supp.2003), the decision "shall contain" "the duration of the administrative revocation." Under the foregoing scheme, then, the period of revocation is set by the director during the administrative review process, subject to objection by the driver.

Following mailing of the decision, HRS § 291E–34(f)(1) (Supp.2003) provides that the driver has six days within which to request an administrative hearing. As noted above, if the driver does not request an administrative hearing, HRS § 291E–37(h) provides that the revocation "period ... provided in the administrative review decision

issued by the director" "shall ... take effect."

### B.

On the other hand, if the driver contests the director's administrative review decision, HRS § 291E–38(a) states that "[i]f the director administratively revokes the respondent's license ..., the respondent may request an administrative hearing to review the decision ... [after the] administration review decision is mailed." Following the hearing, HRS § 291E–38(j) designates the scope of the administrative hearing decision as follows:

The director's decision shall be rendered in writing.... If the decision is to *reverse* the administrative revocation, the director shall return the respondent's license.... If the decision *sustains* the administrative revocation, the director shall mail to the respondent a written decision indicating *the duration of the administrative revocation* and any other conditions or restrictions *as may be imposed pursuant to section 291E–41.*

(Emphases added.)

As indicated previously, the revocation period is imposed under section 291E–41 by the director as part of the "administrative review" process, not as part of the "administrative hearing process." This comports with the purpose of the administrative hearing as a "review" of the director's "review decision" as stated in HRS § 291E–38(a). Accordingly, in the administrative hearing the administrative review decision may either be "revers[ed]" or "sustain[ed]" as indicated in HRS § 291E–38(j). "Reverse" is defined as "[t]o overthrow, vacate, set aside, make void, annul, repeal, or revoke[,]" *Black's Law Dictionary* 1319 (6th ed.1990), and is used, for example, "as, to reverse a judgment sentence or decree of a lower court by an appellate court[.]" *Id.* "Sustain" is defined as "[t]o affirm, uphold or approve, as when an appellate court sustains the decision of a lower court." *Id.* at 1447. Hence, the administrative hearing decision may only nullify the director's administrative review decision or affirm it.[9]

HRS § 291E–38(e) mandates that the hearing officer "shall affirm" the "administrative revocation" if certain criteria are satisfied.[10] "Affirm" is defined as "[t]o ratify, uphold, approve, make firm, confirm, establish, reassert." *Black's Law Dictionary* at 59. Thus, in "the practice of appellate courts, to *affirm* a judgment, decree, or order, is to declare that it is valid and right, and *must stand as rendered below;* to ratify and reassert it; to concur in its correctness and confirm its efficacy." *Id.* (emphases added). Analogously, if the written decision affirms the administrative review decision, it must be as that decision was rendered by the director in the administrative review. This is buttressed by the provision in HRS § 291E–37(h), *see supra,* that if the driver does not request a hearing, the administrative revocation period "to take effect" is that contained in "the administrative review decision issued by the director." Thus, as Custer argues, nothing in HRS § 291E, Part III, "authorizes a hearing officer to increase the period of revocation that was set in the administrative review." Accordingly, no statutory authority exists in the statutes to modify the director's determination of the revocation period that took place during the administrative review process.

---

**9.** While the manner of disposition following the hearing is limited by HRS § 291E–38(e) and (j), HRS § 291E–8 provides for a hearing comporting with due process although not strictly "de novo." *See Freitas,* 108 Hawai'i at 44, 116 P.3d at 686.

**10.** In relevant part, HRS § 291E–38(e) states
(e) The director shall affirm the administrative revocation only if the director determines that:
(1) There existed reasonable suspicion to stop the vehicle ...;
(2) There existed probable cause to believe that the respondent operated the vehicle while under the influence of an intoxicant; and
(3) The evidence proves by a preponderance that:
(A) The respondent operated the vehicle while under the influence ...; or
(B) The respondent operated the vehicle and, after being informed of the sanctions of this part, refused to submit to a breath, blood, or urine test.

## VIII.

The Director, citing to *Gray*, argues that an increase in an administrative revocation period is permissible where the hearing officer " 'state[s] on the record his or her reasons for determining that the extended period is necessary for the protection of the public interest' " and that the hearing officer did just that. *Gray*, 84 Hawai'i at 161, 931 P.2d at 603 (quoting *State v. Okumura*, 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995) (citation and internal quotation marks omitted)) (brackets omitted). In *Gray*, the appellant's driver's license was revoked for life, pursuant to former HRS § 286–261(b)(4) (1993), "following his fourth 'alcohol enforcement contact' within the ten years preceding the date of his arrest for DUI that precipitated this appeal." *Id.* at 140–41, 931 P.2d at 582–83. The appellant's lifetime administrative revocation was subsequently affirmed by a hearing officer of the ADLRO and the district court. *Id.* at 141, 931 P.2d at 583. On appeal to this court, the relevant issue was whether and to what extent the director was authorized to determine the periods of administrative driver's license revocation under HRS § 286–261 (1993). *Id.* at 148, 931 P.2d at 590.

This court held that "the Director is accorded the discretionary authority to increase the minimum periods of administrative revocation for 'non-refusing' arrestees [those arrestees who have consented to a BAC test and failed it]." *Id.* at 160, 931 P.2d at 602. The "Director's discretion[ ] ... to increase [such] periods ... pursuant to HRS § 286–261(b) [was] 'capped' by the mandatory and nondiscretionary periods enumerated in HRS § 286–261(c)." *Id.* at 160–61, 931 P.2d at 602–03 (footnote omitted). Furthermore, "where the Director *does* exercise the discretion, accorded by HRS § 286–261(b), to extend the period of administrative revocation, the Director must state on the record [his or her] reasons for determining that [the extended period] is necessary for [the] protection of the public [interest] and ... [to] enter into the record all findings of fact which are necessary to [his or her] decision." *Id.* at 161, 931 P.2d at 603 (emphasis in original) (internal quotation marks and citations omitted).

▮ However, *Gray* does not suggest that the director may in an administrative *hearing* held pursuant to HRS § 291E–38, consider an offense, occurring after the HRS § 291E–31 notice of administrative revocation had been issued, as a basis for increasing an administrative revocation period already determined on administrative review by the director under HRS §§ 291E–37 and 291E–41. As discussed *supra*, the statutes indicate the director is vested with discretion to increase the revocation period as part of the administrative review process, not in the administrative hearing process. Moreover, the potential length of revocation appears premised "on [the number of] prior enforcement contact[s]" during the designated period "preceding the date the notice of administrative revocation was issued." HRS § 291E–41(b). Hence the director's revocation period determination is circumscribed by that period of time preceding the date of the revocation notice, in this case, January 6, 2003.[11] In increasing the revocation period from three to six months, then, the hearing officer, in acting for the Director, *see supra* note 2, exceeded the statutory authority granted the Director.[12]

The court accordingly committed reversible error in sustaining the hearing decision in its entirety. *See* HRS § 291E–40 (stating that the court may determine "whether the

---

11. In light of the plain language of the statutes, we need not reach the Director's argument that "nothing in the Due Process Clause prohibits an original penalty from being increased at a later stage, based upon anti-social behavior *occurring after the orignal [original] penalty* was imposed[.] *Cf. North Carolina v. Pearce*, 395 U.S. 711, 725–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), ... *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)." (Emphasis in original).

12. Assuming, *arguendo*, a case in which driving without a license had been established, such conduct is subject to criminal penalty. *See* HRS § 291E–62 (Supp.2003). We express no opinion in this case as to whether such conduct falling within a *preceding* designated period under HRS § 291E–41, would be a basis for increasing the revocation period in the director's review process.

358

director[ e]xceeded ... statutory authority[ or e]rroneously interpreted the law"). It is therefore ordered that the judgment shall be amended by affirming the Director's hearing decision, except that the additional three-month revocation period relating to Custer's March 7, 2003 arrest is reversed.

## IX.

In argument (4)(a), Custer contends that ADLRO did not have jurisdiction to hold a valid hearing because Chung, the arresting officer, signed the Certified Statement of Dismissal portion of the notice. Custer argues that "[i]t should be self evident that the police may not inform a driver that the administrative revocation proceeding against him 'had been terminated with prejudice' and then the ADLRO may claim that they have jurisdiction to revoke his license." The Director counters that Custer could not have been misled by the misplaced signature because Chung "did *not* check the box next to the language regarding termination, quite unlike his checking of the other boxes on the form." Furthermore, according to the Director, Custer "signed and thereby acknowledged receiving page 1 of the Notice, ..., which expressly details that he is being subjected to the Administrative Revocation Process, that his license is being terminated thirty days later, and that his license must be surrendered in exchange for a temporary permit".

 It is evident that the police did not terminate the proceedings because the places on the notice that were marked indicated that Custer would face an administrative license revocation. Chung also forwarded the required documents for an administrative review. Thus, we are unpersuaded by Custer's argument. As stated on the notice,

You are the respondent in this administrative proceeding. **Pursuant to the Administrative Revocation Process, Chapter 291E, Part III, [HRS], your license and privilege to operate a vehicle in the State of Hawai'i or on or in the waters of the State are terminated ....**

You were arrested for Operating a Vehicle Under the Influence of an Intoxicant in violation of HRS § 291E-61.

. . . .

*If you possess a license, you must surrender it to the arresting officer who will then issue a Temporary Permit to you.* . . .

(Boldfaced font in original.) (Emphasis added.) Custer had to surrender his license. He was issued the Temporary Permit. The Certified Statement of Dismissal states in relevant part that "[t]his certifies that the administrative revocation proceeding against you has been terminated with prejudice and that your driver's license and motor vehicle registration and license plates, if applicable, have been returned to you (1) because your alcohol concentration test result was less than .08...." The record indicates that Custer's BAC was .15 and, thus, not "less than .08." If the proceeding had been terminated with prejudice, Custer's driver's license would have been returned. Plainly the revocation proceeding had not been terminated. As such, we hold that argument (4)(a) is not meritorious.

## X.

Therefore, the July 16, 2003 judgment of the court is affirmed, except that that part of the judgment relating to an additional three-month revocation period arising from the March 7, 2003 arrest of Custer is reversed.

